## McCurdy Estates

*High, Swartz, Roberts & Seidel,* for petitioner.
*Fox, Differ, DiGiacomo & Lowe,* for respondent.

TAXIS, P. J., February 21, 1964.—The petition of John G. McCurdy, the father of the three minor children whose estates are the subjects of these proceedings, seeks a review under sections 721, 983, and 1083 of the Fiduciaries Act of April 18, 1949, P. L. 512, of decrees of court dated June 12, 1963.

On May 22, 1963, Anne C. O'Hey, the mother of the three minor children whose estates are the subjects of these proceedings, presented to the court two petitions, each being entitled "Petition of Parent for Allowance out of Minor's Estate for Camp Expenses," seeking awards out of principal or income of the guardianship estates of John C. McCurdy, Jr. and Anne C. McCurdy.

On June 12, 1963, after a hearing, two decrees were entered by this court upon Mrs. O'Hey's petitions ordering the guardian to pay Mrs. O'Hey from principal $447 for John G. McCurdy, Jr. and $570 for Anne C. McCurdy, to be used for the expense of sending them to summer camp. At the hearing, Mrs. O'Hey's counsel advised the court that he knew of no contest. Fidelity-Philadelphia Trust Company, the guardian of the estates, did not enter an appearance. Testimony having been presented by Mrs. O'Hey alone and the court having been satisfied from her testimony that she was unable to send the children to the camps in question on the moneys available for their support, the court entered the decrees as above.

It was the testimony of Mrs. O'Hey that John G. McCurdy, the father of the children, was paying her $195 per week for the support of their four children. Mrs. O'Hey further testified that she deducted $270 from the actual camp expenses of each minor, the $270 representing the portion of the support order, excluding general expenses, which was allotted to the support of each child for the period during which he or she would be at camp.

On October 21, 1963, the father of the minor children presented to the court the petitions, which are the subject of this proceeding, seeking to open and review the decrees making the above awards. Mrs. O'Hey objects to the father's petition relying on the language of the statute under which the petitions were brought. Mrs. O'Hey contends that the provisions of the statute

cannot be invoked by the father since he is not a party in interest within the protection of the statute and since the statute is not applicable where there has been distribution in accordance with a decree of court.

The statute in question appears to apply to the confirmation of accounts and it is doubtful that the statute is applicable to decrees authorizing allowances, such as are the subject of this proceeding. In any event, irrespective of the statute, the orphans' court possesses an inherent power to correct its own records in the interest of justice even to protect parties from the effect of their own mistakes and blunders. The court will grant such relief as justice and equity requires: Gerlach Estate, 364 Pa. 207, 215.

Furthermore, the decrees in question effect directly a diminution of the estates of the minors. A minor being under Pennsylvania law incapable of holding and dealing in property in his own right is peculiarly within the protection of the orphans' court in its jurisdiction over his estate, and the orphans' court has exclusive jurisdiction over the administration and distribution of the real and personal property of minors' estates: Orphans' Court Act of August 10, 1951, P. L. 1163, art. III, sec. 301 (4), as amended, 20 PS §2080.301(4). Accordingly, it is within the broad powers vested in this court for the protection of the interests of its ward to review decrees which adversely affect the estates of unrepresented minors.

The decrees in question were based on Mrs. O'Hey's testimony that she was unable to send the minor children to the camps in question on the moneys available for their support. Mrs. O'Hey did not suggest to the court that the total camp expenses might be either her responsibility or the responsibility of the father under the terms of the support order rendered by the court of quarter sessions. This court was not made aware that the minors' estates would be diminished by pay-

ment of an expense which might be the primary responsibility of one or another of the parents of the minor children. No request was made for representation of the minors' interest at the hearing; rather, counsel for Mrs. O'Hey advised the court that the guardian of the estates did not intend to enter any appearance, that the guardian would abide by the court's decision, and that there was no known contest of the petitions. To enter upon a discussion to establish that such a proceeding was not conclusive upon the unrepresented minors would require an unnecessary waste of words and could add nothing to the force of a mere statement of facts. See White's Estate, 163 Pa. 388, 399-400.

In reviewing the petitions for allowance for camp expenses, the court finds that the decrees of June 12, 1963, granting such allowances were improper. The decrees are hereby vacated and Anne C. O'Hey, the distributee under the decrees, is directed to reimburse the minors' estates in the amount of the allowances.

In concluding that the allowances were improper, the court considered the suggestion of the Superior Court that Mr. McCurdy's standard for support is that of a wealthy man and the suggestion of Judge Robert W. Honeyman of the Court of Quarter Sessions of this county that his support order contemplated the legal proposition that children of wealthy parents are entitled to the benefit of good camps.

The Superior Court in rejecting the father's complaint that the sending of the children to private schools, because of their individual estates, indicates a standard of living higher than the father can afford, found an obvious answer in the fact that the children attended private schools during the time that they lived with the father, who himself was accorded a similar education in his youth. The Superior Court concluded this issue by citing Hecht v. Hecht, 189 Pa.

Superior Ct. 276, for the proposition that a wealthy father has a legal duty to give his children the advantages which his financial status indicates to be reasonable: Commonwealth ex rel. O'Hey v. McCurdy, 199 Pa. Superior Ct. 115, 122. It was thus the Superior Court's view that Mr. McCurdy's standard is that of a wealthy father.

The opinion and order of Judge Honeyman, which were affirmed by the Superior Court, also cited the Hecht case for the proposition that children of wealthy parents are entitled to the best medical care, good clothes, familiarity with good restaurants, good hotels, good shows, and *good camps:* Record at 187-A, 188-A. Accordingly, it is apparent that the expenses of a good camp were contemplated in determining the amount of support to be paid by Mr. McCurdy, and the petitions for allowance out of the minors' estates for such expenses should have been denied.

Mrs. O'Hey has filed with the court petitions requesting allowances out of the minors' estates for the cost of school lunches and school transportation. Mr. McCurdy has filed answers to her petitions alleging that these items should properly be paid out of the weekly support orders. The issue, therefore, is whether the weekly support order imposed by Judge Honeyman contemplated the school lunches and school transportation for which the allowances are sought.

The order of Judge Honeyman was affirmed by the Superior Court and it is apparent that his opinion was totally affirmed: Commonwealth ex rel. O'Hey v. McCurdy, 199 Pa. Superior Ct. 115. Subsequent to the opinion of the Superior Court, the parties, through their respective counsel, again appeared before Judge Honeyman to resolve the precise issue that is presently before this court. At that time, Judge Honeyman clarified the terms of his earlier opinion and order as follows:

"We have had this case before me a half a dozen times, and it has been up to the Superior Court twice. Who agitates the litigation I don't know, but if anybody wants to lay to rest any piece of litigation—I guess the fault lies partially on both parties, but, in any event, to clarify it I will say that the mother, out of the support money, is to pay for transportation and food, and any expenses in connection with the school, the school activities, be they dramatic, artistic, athletic, anything of that sort in connection with the school program are to be paid by somebody other than the support order." [Notes of testimony pages 18-19.]

The terms of the opinion and order having been clarified by the writer of the opinion and order, this court finds that the school lunches and school transportation for which the allowances are sought are to be paid out of the weekly support order and, accordingly, the petitions for allowances are herewith dismissed.

In the interest of preserving minors' estates, this court is reluctant to order allowances out of minor's estates where the expenses for which allowances are sought are the responsibility of the minors' parents. Where the obligations of a father have been determined to be those of a wealthy man, it is difficult to conceive a situation where an expense for which an allowance is sought is not the responsibility of the father. Either the support order would have contemplated such an expense, or the expense would constitute a change of circumstances which would warrant a petition to increase. By way of exception, of course, expenditures out of the minors' estates are to continue where they are a basis of the determination of the amount of the support order, such as the estates' tuition expenditures.

And now, February 21, 1964, after consideration of the record and able arguments and briefs of counsel for the parties, the allowances for summer camp expenses are vacated and Anne C. O'Hey is directed to

reimburse the minors' estates in the amount of the allowances improperly decreed; further, the petitions for allowance out of the minors' estates for school transportation and school lunches are herewith dismissed.

## Opinion Sur Exceptions

TAXIS, P. J., June 3, 1964.—On February 21, 1964, after proceedings spreading over many months, this court entered a decree (1) dismissing the petitions of the mother of the above minors for allowances from their individual estates for the expenses of transportation to and from and lunches at school, and (2) reversing earlier decrees, also resulting from the mother's petitions, which had permitted the payment óf summer camp expenses from the individual estates of the first two minors, and ordering reimbursement of these sums. By permission of the court, exceptions on behalf of the mother were allowed to both parts of this decree, although in form it was a final decree as set forth in section 401 of the Orphans' Court Act of 1951 and Rule 75.1 of the rules of practice of this court.

The first part of the decree above referred to was based on the conclusion that transportation and lunch expenses should be paid by petitioner out of the funds which she receives from her former husband for the support of their children. The Court of Quarter Sessions of Montgomery County at February term, 1961, no. 132, has fixed the sum of $195 per week for the support of the three minor children now before the court, and a fourth not involved in the present proceedings. The record of the support proceeding has been referred to at length in the prior opinion in this matter, and it is clear from the language of the hearing judge in that case that the order was intended to include costs of this sort. It is not within the jurisdiction of this court to review the merits of the support proceeding; there is no doubt it provides for adequate

financing of the expenses in question without invasion of the minors' individual estates.

The second part of the decree above referred to also results from the conclusion that the father of these children is and has been made liable for camp expenses. Both the Court of Quarter Sessions and the Superior Court agree that the facts in this case characterize Mr. McCurdy as a wealthy person. See Commonwealth v. McCurdy, 199 Pa. Superior Ct. 115. In such cases, "good camps" are included as an item of support to which the children of such a person are entitled: Hecht v. Hecht, 189 Pa. Superior Ct. 276.

Any financial burden resulting from the order upon Mrs. O'Hey to reimburse the guardianship estates stems primarily from the fact that Mr. McCurdy did not receive notice of the pending proceedings, which would have afforded him the opportunity to object if he desired to do so. The record here reveals that the guardianship estates sought to be invaded were created for his children by Mr. McCurdy, from his and the McCurdy family money. The normal concern about notice to him that would have existed in the court's mind was put at rest by assurances that there was no contest over the proposed allowances.

It has been suggested by exceptant that an alternative solution to restitution would be to surcharge the guardian, but certainly its conduct in not opposing the petitions cannot amount to the supine negligence required therefor, and, in addition, actual payment was made under a decree of this court. It is also pointed out that, while the parents lived together, some of the expenses here in question were paid by the guardian; but this fact is now irrelevant, for presently the parents are divorced, and formal litigation, not amicable agreement, has definitely fixed the source of the payment of such costs. It is also argued that, since the camp allowances have been expended and the other expenses in-

curred, the court should reverse its prior holding to the extent of allowing payment from the guardianship estates of the costs and expenses as they now exist so as not to cause excessive hardship on the minors while restitution is made. However, whether it is applied to the past or to the future, such a ruling would effectively alter the support order as imposed, and this, as earlier pointed out, is beyond the jurisdiction of the court. Of course, if Mrs. O'Hey is constrained to have the support order modified, quarter sessions is the forum for such problem.

And now, June 3, 1964, the exceptions are dismissed.